# EXHIBIT A

Jill Miller and Associates, P.C.
By: Melissa J. Foley, Esquire
I.D. #: 84559
220 Penn Avenue, Suite 301
Scranton, PA 18503
(570) 341-3400

Attorney for Plaintiff

| | |
|---|---|
| CAROL MONCAK<br>219 Laurel Street<br>Archbald, PA 18403 | IN THE COURT OF COMMON PLEAS<br>OF LACKAWANNA COUNTY |
| Plaintiff | |
| vs. | JURY TRIAL DEMANDED |
| LIBERTY LIFE ASSURANCE<br>COMPANY OF BOSTON<br>175 Berkeley Street<br>Boston, MA 02117 | NO. 2015-CV- 5428 |
| Defendant | |

## NOTICE

YOU HAVE BEEN SUED IN COURT. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and Notice are served, by entering a written appearance personally or by attorney, and filing in writing with the Court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so, the case may proceed without you and a judgment may be entered against you by the Court without further notice for any money claimed in the Complaint or for any other claim or relief requested by the Plaintiff. You may lose money or property or other rights important to you.

-1-

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

North Penn Legal Services, Inc.
108 N. Washington Avenue
Scranton, PA 18503
(570) 342-0184

PA Lawyer Referral Service
P.O. Box 186
Harrisburg, PA 17108
(Pennsylvania residents phone
1-800-692-7375; out of state
residents phone 1-570-238-6715)

# EXHIBIT A

Jill Miller and Associates, P.C.
By: Melissa J. Foley, Esquire
I.D. #: 84559
220 Penn Avenue, Suite 301
Scranton, PA 18503
(570) 341-3400          Attorney for Plaintiff

---

| | |
|---|---|
| CAROL MONCAK<br>219 Laurel Street<br>Archbald, PA 18403 | IN THE COURT OF COMMON PLEAS<br>OF LACKAWANNA COUNTY |
| Plaintiff | |
| vs. | |
| LIBERTY LIFE ASSURANCE<br>COMPANY OF BOSTON<br>175 Berkeley Street<br>Boston, MA 02117 | NO. 2015-CV- 5428 |
| Defendant | |

# COMPLAINT

MARY F. RINALDI
LACKAWANNA COUNTY
2015 SEP 14 PM 3 02
CLERK OF JUDICIAL
RECORDS CIVIL DIVISION

EXHIBIT A

NOW COMES the Plaintiff, Carol Moncak, through her counsel, Jill Miller and Associates, P.C. and complains of the Defendant, Liberty Life Assurance Company of Boston, as follows:

1. Plaintiff, Carol Moncak, is an adult and competent individual residing at 219 Laurel Street, Archbald, Lackawanna County, Pennsylvania.

2. Defendant, Liberty Life Assurance Company of Boston ("Liberty Life"), is a business entity licensed to sell policies of insurance in the Commonwealth of Pennsylvania.

3. Defendant, Liberty Life's principal place of business is located at 175 Berkeley Street, Boston, Massachusetts 02117.

4. Defendant, Liberty Life's mailing address is 100 Liberty Way, Dover, NH 03820.

5. At all times relevant hereto, Defendant, Liberty Life, and/or its successors, issued a Group Disability Income Policy of insurance to Cinram U.S. Holdings, Inc. ("Cinram"), Policy Number: GD/GF3-830-505658-01. ("the Policy"). (The Defendant is in the exclusive possession and control of the Policy.)

6. The Policy provides Long Term Disability Benefits for two "classes" of employees.

7. The Policy defines "Class 1" employees as "All Employees of Cinram (U.S.) Holding's Inc. and Associated Companies earning $75,000 or more annually."

8. The Policy defines "Class 2" employees as "All Employees of Cinram (U.S.) Holding's Inc. and Associated Companies earning less than $75,000 annually."

9. The Policy identifies Cinram Manufacturing, LLC, 1400 E. Lackawanna Avenue, Olyphant, PA 18448 as an Associated Company.

10. At all times relevant to this Complaint, Plaintiff Moncak was an employee of Cinram Manufacturing, LLC earning $11.00 an hour.

11. At all times relevant to this Complaint, employees of Cinram were given the option of enrolling in the "Opt-up Plan" which required the employee to contribute to the Liberty Life disability plan.

12. Plaintiff Moncak elected to participate in the Opt-Up Plan and allowed Cinram to make payroll deductions for her contribution to the Liberty Life disability plan.

13. The Policy provides Class 2 employees participating in the Opt-up Plan Long Term Disability Coverage in the amount of "60% of Basic Monthly Earnings not to exceed a Maximum Monthly Benefit of $15,000 less Other Income Benefits and Other Income Earnings as outlined in Section 4."

14. At all times relevant to this Complaint, Plaintiff Moncak's Basic Monthly Earnings were $1,849.47.

15. With respect to Long Term Disability Benefits, the Policy provides a Maximum Benefit Period for persons who were born on or after 1960 and who are less than 60 years of age at the time of disability to age 67.

16. Plaintiff Moncak's date of birth is June 7, 1961.

17. At all times relevant to this Complaint, Plaintiff Moncak's disability began on February 24, 2010 when she was 48 years old.

18. The Policy defines, "Disability" or "Disabled", with respect to Long Term Disability, as:

> b. i. if the Covered Person is eligible for the 12 Month Own Occupation benefit, "Disability" or "Disabled" means that during the Elimination Period and the next 12 months of Disability, the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation.
>
> ii. thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation.

19. The Policy defines "Own Occupation" as "the Covered Person's occupation that he was performing when his Disability or Partial Disability began. For the purposes of determining Disability under this Policy, Liberty will consider the Covered Person's occupation as it is normally performed in the national economy."

20. The Policy defines "Any Occupation" as "any occupation that the Covered Person is or becomes reasonably fitted by training, education experience, age, physical and mental capacity."

21. The Policy defines "Elimination Period" as "a period of consecutive days of Disability for which no benefit is payable. The Elimination Period is shown in the Schedule of Benefits and begins on the first day of Disability."

22. The Elimination Period in the Schedule of Benefits for the Policy issued to Cinram is the greater of the end of the Covered Person's Short Term Disability Benefits; or 180 days.

23. The Policy defines "Injury" as "bodily impairment resulting directly from an accident and independently of all other causes. For the purposes of determining benefits under this policy: (1) any Disability which begins more than 60 days after an Injury will be considered a Sickness;"

24. The Policy defines "Sickness" as "illness, disease, pregnancy or complications of pregnancy."

25. The Policy defines "Material and Substantial Duties" as "responsibilities that are normally required to perform the Covered Person's Own Occupation, or any other occupation, and cannot be reasonably eliminated or modified."

26. Upon information and belief, at all times material to this Complaint, the Policy was in full force and effect and all premiums due Defendant were paid in full.

27. On or about February 24, 2010, the Plaintiff became Disabled as a result of pain, intervertebral disc degeneration in cervical and lumbar regions of the spine, advanced disc degeneration and a central disc protrusion at L5-S1 with foraminal stenosis, lumbar radiculopathy.

28. Following the elimination period, the Defendant began to pay Plaintiff Moncak long term disability ("LTD") benefits effective August 23, 2010.

29. Plaintiff Moncak's gross monthly LTD benefit was $1,109.68.

30. At the time she became disabled, Plaintiff Moncak's job title was "DVD Mold Printer."

31. According to Plaintiff Moncak's employer, the requirements, training and experience for the job of DVD Mold Operator are an ability to communicate in English; ability to read, write and perform basic mathematics; and basic computer skills.

32. On or about March 28, 2011, Plaintiff Moncak filed for Social Security Disability benefits ("SSD") and utilized the services of a law firm provided by Defendant, which law form went out of business. The Plaintiff reapplied for Social Security benefits and is awaiting a hearing.

33. In April 2010, Plaintiff Moncak underwent a lumbar spinal fusion performed by Dr. Allan Gillick.

34. In an office note dated April 18, 2011, Dr. Gillick noted that Plaintiff Moncak continued to experience "aching discomfort in her back" and a "fairly constant aching in her legs."

35. During the visit of April 18, 2011, Dr. Gillick directed Plaintiff Moncak to "continue to cautiously increase her activity level."

36. On July 11, 2011, Plaintiff Moncak had an MRI of the lumbar spine which was ordered by Dr. Majernick due to low back and leg pain.

37. The MRI revealed chronic intervertebral herniations causing endplate deformities at L1-L2.

38. On September 27, 2011, Edward Batzel, M.D., Plaintiff Moncak's vascular surgeon, noted, "The patient has pain in her legs that can occur at rest and with walking...she does complain of pain in her bilateral calves, more so on the left than the right, consistent with vascular claudication. The patient states that this can occur after a couple of blocks and is somewhat disabling. ...A duplex ultrasound does reveal proximal and midlevel vascular disease bilaterally that is mild to moderate."

39. In an office note dated October 19, 2011, Dr. Gillick noted that Plaintiff Moncak was continuing to have discomfort with flexion, extension and rotational movements which concerned her family physician, Dr. Majernick, to the extent that he ordered a new MRI in an effort to explain Plaintiff Moncak's pain.

40. On November 14, 2011, Dr. Majernick completed a Restrictions Form at the request of the Defendant wherein he states Plaintiff Moncak "is unable to work in any capacity due to continued back and leg pain" and "cannot work due to pain and medications taken for same - takes Norco for pain."

41. On December 5, 2011, Plaintiff Moncak completed an Activities Questionnaire at the request of the Defendant where she reported that she is able to sit for one hour, stand for 10-15 minutes, walk 20 minutes, sit in a car for 30 minutes and drive for 10-15 minutes; she naps for 2-4 hours in the morning and afternoon and spends approximately 4 hours a day in bed; she leaves the house 1 or 2 times per week to run errands and go to the doctor; she stated that she cannot work in her garden, on her house or

wash her car; she cannot carry groceries into the house, clean the bathroom or vacuum and requires assistance with grocery shopping, cooking, cleaning after cooking, laundry and going up and down stairs; and she does not travel.

42. In the Activities Questionnaire completed on December 5, 2011, Plaintiff Moncak described what prevents her from engaging in any gainful employment: "Chronic back and leg pain, unable to walk far, unable to stand for periods of time without leaning on something, need to lie down during the day to ease pain and need to elevate legs to ease pain and/or swelling in calves to ankles."

43. In the Activities Questionnaire completed on December 5, 2011, Plaintiff Moncak described her daily routine: "Shower, breakfast, check blood sugar, medications, get dressed, pay bills, cook something for dinner, take small naps in between because back and leg pain prevent me from sleeping more than a few hours, watch some tv, use computer to pay bills and read newspaper."

44. Dr. Majernick's office note dated February 14, 2012 reflects that on examination, Plaintiff Moncak walked with a "slightly antalgic gait" and had bilateral paralumbar tenderness.

45. On February 20, 2012, Dr. Thomas Majernick, Plaintiff Moncak's family physician, completed a Restrictions Form at the request of the Defendant wherein he reported: Plaintiff's diagnoses are 723.1 Cervicalgia, 724.2 Lumbago and 722.1 Displacement of Lumbar Disc without myelopathy; Plaintiff Moncak is unable to work in any capacity due to back and leg pain; and Plaintiff Moncak is in constant pain.

46. In an office visit document dated February 20, 2012, Dr. Majernick noted that Plaintiff Moncak's chief complaint was "Continued low back pain radiates like tooth ache down back both legs to knees. Sometimes up to mid-back. Takes Vicodin every 6 hours."

47. On June 25, 2012, Plaintiff Moncak was seen in follow up by Dr. Gillick who reported that Plaintiff Moncak is "constantly looking for ways to treat the pain" and that her symptoms may require her to undergo surgery.

48 On July 19, 2012, C. David Bomar, MD, a physician commissioned by the Defendant to conduct a record review of Plaintiff Moncak, spoke with Dr. Majernick on the telephone who informed Dr. Bomar that Plaintiff Moncak continues to have low back pain, is unable to sit for long without pain, she takes Vicodin for pain, she cannot do a sedentary job with prolonged sitting and she cannot work while taking Vicodin.

49. On July 5, 2012, Dr. Allan Gillick, Plaintiff Moncak's orthopaedic surgeon, completed a Restrictions Form at the request of the Defendant wherein he reported Plaintiff's diagnosis is lumbar degenerative disc disease and she has constant back pain which prevents her from work.

50. On July 31, 2012, Jill S. Brown of Jill Brown Case Management, prepared a report concerning a transferable skills analysis of Plaintiff Moncak at the request of the Defendant.

51. In her report, the only medical evidence to which Ms. Brown refers is the July 19, 2012 report of Dr. Bomar wherein she states, "Dr. C. David Bomar, Board Certified Orthopaedic Consultant, opines that Ms. Moncak should avoid lifting more than about 20 pounds."

52. In her report, Mrs. Brown acknowledges that Plaintiff Moncak has a 12th grade education and that her employment history consists of 2 jobs, "Printer" for 9 years and a grocery store cashier for 9 years.

53. Ms. Brown acknowledges that Plaintiff Moncak has no computer training and that her computer experience is limited to at-home use for paying bills and reading news.

54. Despite Ms. Moncak's limited employment history, Ms. Brown concluded that Ms. Moncak's transferrable skills include, "**Active Listening** - Giving full attention to what other people are saying, taking time to understand the points being made, asking questions as appropriate, and not interrupting at inappropriate times. **Service Orientation** - Actively looking for ways to help people. **Speaking** - Talking to others to convey information effectively. **Mathematics** - Using mathematics to solve problems. **Social Perceptiveness** - Being aware of others' reactions and understanding why they react as they do. **Production and Processing** - Knowledge of raw materials, production processes, quality control, costs and other techniques for maximizing the effective manufacture and distribution of goods. **Mechanical** - Knowledge of machines and tools, including their designs, uses, repair and maintenance."

55. In her report, Ms. Brown opined that Ms. Moncak is capable of employment as a gate guard, information clerk, telephone solicitor and an order clerk, all of which she states earn a monthly wage higher than Plaintiff Moncak's pre-disability monthly wages.

56. In her report, Ms. Brown confirms that she did not meet with Plaintiff Moncak and that the only medical evidence she reviewed or considered was the report of Dr. Bomar.

-10-

57. By letter dated August 7, 2012, the Defendant informed Plaintiff Moncak that it had determined that she was not eligible to receive long term disability benefits beyond August 22, 2012, the termination of the "own occupation" disability period.

58. The August 7, 2012 letter states in relevant part:

- Our review of your claim was based on the current restrictions and limitations due to your diagnosis of degenerative disc disease causing lower back pain.

- In order to determine your current restrictions and limitations, we requested and received updated medical documentation from Dr. Alan Gillick (orthopaedic surgery) and Dr. Thomas Majernick (internist).

- To ensure a thorough review of your eligibility to receive ongoing benefits and to determine your level of functionality, your claim was referred for clinical review and assessment by a licensed physician Board Certified in Orthopedics.

- The review states that you underwent a L5-S1 lumbar fusion surgery on April of 2010 with Dr. Gillick. Over the next two years you continued to report ongoing back and leg pain, however there was never any indication of a neurological deficit or compromise. Strength and sensation levels were repeatedly noted as normal during office appointments. Your most recent appointment with Dr. Gillick occurred on June 25, 2012. During this visit, you reported improvement, however minor spinal tenderness and discomfort with motion was noted. X-rays showed a solid fusion, and a straight leg raise was negative. Due to your complaints of pain, hardware removal was discussed; however you were not interested in additional surgery. You were advised to return in six months. A Restrictions Form from Dr. Gillick dated July 5, 2012 advises no work capacities.

    You have also followed with Dr. Majernick, whose examination records have continuously shown a normal gait and no neurological deficit(s). During an appointment on February 20, 2012 it is noted that you were seen for completion of disability paperwork. You reported pain, however your gait was normal and there was no recorded weakness or sensory loss on exam. Your

last appointment with Dr. Majernick was reported as May 15, 2012, at which time your chief complaint involved hypertension and diabetes. Physical exam results were similar to your previous appointment, and provided similar findings to that of Dr. Gillick.

In summary, the available records do support the restriction of no lifting over 20 pounds. The records do not support restrictions or limitations involving sitting, standing, walking, nor do the records support an inability to work full time with these restrictions. While your treating providers stated you have no work capacity, these restrictions are not supported by the available records and exam findings.

- Based on our medical and vocation reviews, we have determined that you can perform, with reasonable continuity, the material and substantial duties of the above occupations [see par. 47] based on your capacity and skill level. Therefore, you do not meet Cinram U.S. Holdings, Inc.'s definition of disability beyond August 22, 2012 and your claim is closed as of August 23, 2012.

59. By letter dated February 4, 2013, counsel for Plaintiff Moncak requested a review of the termination of her long term disability benefits and identified errors and inconsistencies in the Defendant's analysis of her claim.

60. By letter dated March 6, 2013, the Defendant informed Plaintiff Moncak that it would not alter its original determination to terminate her claim for long term disability benefits.

61. The group policy issued by the Defendant constitutes an employee benefit plan pursuant to the Employee Retirement and Security Act (ERISA), 29 U.S.C. §1001, et. seq.

62. Upon information and belief, the Plaintiff avers that the Defendant was the administrator and fiduciary of the group policy and plan as well as the insurer and the party obligated to pay benefits due to the Plaintiff.

63. Plaintiff provided Defendant with numerous authorizations entitling it to complete access to all of her medical records without limitation or exclusion.

64. Plaintiff provided the Defendant with numerous reports and records containing the opinions of her treating physicians.

65. The actions and inactions of the Defendant were arbitrary and capricious as follows:

    a. Failing to conduct an adequate, proper, reasonable and objective investigation into the claim of the Plaintiff;
    b. Failing to investigate the claim of the Plaintiff after reasonable notice that the denial of benefits was erroneous;
    c. Subordinating the interests of its insured to its own financial interest;
    d. Failing to give proper weight to the interest of the Plaintiff in conformity with the fiduciary owed to the insured;
    e. Apply an arbitrary, capricious, self-serving and unrealistic standard in the evaluation of the claim of the Plaintiff;
    f. Denying benefits despite the presence of substantial and credible evidence of Plaintiff's entitlement to said benefits;
    g. Requiring the Plaintiff to institute litigation to recover amounts due under the policy;
    h. Employing a process designed to result in an outcome in the Defendant's favor;
    I. Failing to provide coverage after proof of Plaintiff's loss was complete and communicated to Defendant or its representative;
    j. Ignoring the opinions of Plaintiff's treating physicians; and
    k. Adopting and implementing arbitrary and capricious standards for the prompt investigation of the claim of the Plaintiff.

66. The Defendant fiduciary has discretionary authority to determine the Plaintiff's eligibility for disability benefits under the policy and is also the entity responsible for paying the benefits under the policy and, therefore, the Defendant's conduct must be reviewed by employing a heightened arbitrary and capricious standard.

-13-

67. Using the heightened standard, the Court must look not only to the Defendant's decision to deny the Plaintiff's claim, but must also review the process by which the result was achieved.

68. Defendant's conclusions that the Plaintiff is not disabled under the terms of the policy and is able to perform the main duties of her occupation are arbitrary and capricious.

69. Defendant, through negligence or abuse of discretion, violation of contractual, statutory and fiduciary duties and other wrongful and intentional conduct specified above, has arbitrarily failed and refused to pay the benefits due Plaintiff under the policy of insurance.

70. Defendant's denial of benefits to the Plaintiff is contrary to the terms of the policy, unreasonable, arbitrary, capricious and constitutes an abuse of discretion.

71. Defendant violated various regulations and rules issued by the federal government in making these self-interested decisions to deny Plaintiff's benefits and in its method of compiling and evaluating the evidence or claim and in administering the claim.

72. Based on the foregoing, Defendant's decision to deny Plaintiff's benefits is not entitled to any deference and this Court should decide Plaintiff's entitlement to such benefits *de novo* on the basis of all relevant and available evidence, and not limited to the administrative file.

73. Plaintiff is entitled to recover the full amount of benefits under the group policy providing for disability benefits together with interest and costs pursuant to §502 (a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B).

74. By reason of Defendant's failure to pay the benefits due and owing to Plaintiff under the terms of the policy, Plaintiff has been forced to retain counsel to recover such benefits for which the Plaintiff has incurred and will continue to incur attorney's fees.

75. Plaintiff is entitled to recover attorney's fees and costs of this action, pursuant to §502 (g)(1) of ERISA 29 U.S.C. §1132(g)(1).

76. Plaintiff has exhausted all other remedies and relief available under ERISA.

77. Plaintiff exhausted all internal appeal procedures required by Defendant and is therefore entitled to bring this action for judicial relief.

WHEREFORE, Plaintiff, Carol Moncak, demands judgment against the Defendant, Liberty Life Assurance Company of Boston, and in her favor in an amount in excess of $50,000.00 together with compensatory damages, interest, costs of suit, attorney's fees, and any other damages allowed by 29 U.S.C. §1132.

Respectfully Submitted:

JILL MILLER and ASSOCIATES, P.C.
Attorneys for Plaintiff

By: _____
Melissa J. Foley, Esquire

## **VERIFICATION**

I, Carol Moncak, state that I am the Plaintiff in the foregoing action and that the attached Complaint is based upon information which I have furnished to my counsel and information which has been gathered by my counsel in the preparation of the lawsuit. The language of the Complaint is that of counsel and not of the Plaintiff. I have read the Complaint and to the extent that the Complaint is based upon information which I have given to my counsel, it is true and correct to the best of my knowledge, information and belief. To the extent that the content of the Complaint is that of counsel, I have relied upon counsel in making this Verification. This statement is made subject to the penalties of 18 Pa. C.S. §4904, which relates to unsworn falsification to authorities.

*Carol Moncak*
CAROL MONCAK